# Hutcherson et al. v. Roland et ux.

(Decided Feb. 10, 1933.)

F. A. HARRISON and A. M. SAMUELS for appellants.

L. M. ACKMAN for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER
—Affirming.

Kinsey Hutcherson, many years ago, lived upon a farm he owned in Grant county, and he had a road running out from his house to the Dixie Highway, which is known in the record as the "upper road." Later he built a mill on the north of this road and built a turn-off down to the mill, which left the road to his house about 90 feet from the highway, and is known in the record as the "lower road." Both these roads were only 10 or 12 feet wide, and a curve was constructed at the lower end of the lower road by which persons could turn from one road into the other. The reason for this was that the upper road ran on top of a bank, and there was no way to turn at this point except by the curve. Hutcherson, as the defendants showed, ceased operating his mill about 1905. In 1911 he sold to appellee, Laura Roland, a lot containing one-fourth of an acre lying between his house and the Dixie Highway, and fronting 100 feet on the upper road. Later she and her husband built a blacksmith shop on the lot, and they used both the upper and lower road; appellants, who had inherited the remainder of the land from Kinsey Hutcherson, undertook to close up the curve connecting the two roads. Appellees filed their petition on September 26, 1930, to enjoin them from fencing it up. The issues were made up and proof taken. The circuit court adjudged them the relief sought, and the defendants appeal.

The situation is shown on the following plot, on which 1, 2 indicate the upper road; line 3, 4 the lower

road, and 4, 2 the curve. The lines on either side, marked with a cross, are the fences inclosing the land. These fences are in round numbers about 50 feet apart.

In the deed to appellee there is this clause: "The upper road is not to be closed up without the consent of the parties." The testimony is somewhat conflicting. Appellee testifies that when she bought the property the mill was operating and the curve from 2 to 4 was open and the road was in general use, and was the only way in which one could get out, when he came in on either road; that it has continued in use since by her and those coming to her place or using the road otherwise.

On the other hand the proof for the defendants is that this curve fell into disuse after the mill was taken away and was largely grown up in grass when they undertook to fence it up. The clear weight of the evidence shows that for many years before appellee purchased, this curve had been used as a part of these roads by everybody as a matter of right; that the upper

road ran on a bank, and that the curve following the bank was the only way one could reasonably get out. While there was not so much use of this curve after the mill ceased operation, it continued to be used to some extent by the people until appellants undertook to fence it off. Appellants argue earnestly that the deed providing that the upper road is not to be closed up without the consent of all parties left the grantor free to do as he wished with the lower road. On the other hand it is argued for the appellee that this curve is a necessary part of the upper road, and was a part when appellee bought, and that to fence off this curve is to practically close the upper road, as there would then be no other way to get out by reason of the high bank on which it runs. In Powers v. Ward, 200 Ky. 478, 255 S. W. 105, 106, 34 A. L. R. 230, the rule, which is fully sustained by the authorities cited, is thus stated:

"The authorities are agreed, and such is the rule in this state, that where the owner of an entire tract of land, or of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists, such easement being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication."

Appellee's lot rises from the road and in fact lies on the side of a hill. The house sets back on ground much higher than the road, and the curve 2, 4 follows the hillside around to the lower road. To make another turning place on her lot she would have to cut into the hillside at a great expense. When she bought she took the lot as it then stood. Then the only practical way of getting out of or into the lot was to come in on one road, go around this curve, and go out on the other. The right to so use this road, as it then stood and had stood for many years, was appurtenant to her property as she bought it. It was an easement necessary to the reasonable enjoyment of the property, and passed to the grantee by implication. The road had then been used for more than thirty years in this way, and the use of this way to get in and out of the property conduced much to its salability. The circuit court properly so held under the evidence.

Judgment affirmed.